**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ANIKO TASSY TOKA AND THOMAS TASSY AS NEXT FRIENDS OF B.V.T., | § | |
| | § | **CIVIL ACTION NO. 4:24-CV-01135-AGD** |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| LEWISVILLE INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Lewisville Independent School District's ("Defendant") Motion for Summary Judgment (Dkt. #24) ("Motion"). Having reviewed the Motion and all other relevant filings, the court finds that Defendant's Motion (Dkt. #24) should be granted.

## I. BACKGROUND

From August to September 2023, B.V.T. ("Plaintiff")[1], a minor, was a student at Donald Elementary School ("DES") within the Lewisville Independent School District (Dkt. #7, at p. 1). At the time of the following described incident, Plaintiff "qualified for special education and related services under the [Individuals with Disabilities Education Act] [("]IDEA["]) as a student with autism and a speech impairment and had an Individualized Education Program (["]IEP["])"

[1] It has long been held that "[t]he next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another." *Morgan v. Potter*, 157 U.S. 195, 198 (1895); *See also X.D. by De Leon v. Totally Kids Learning Ctr*., No. 1:24-CV-051, 2024 WL 4093215, at *5 (S.D. Tex. Aug. 12, 2024), *report and recommendation adopted sub nom. X.D. by De Leon v. Totally Kidz Learning Ctr.*, No. 1:24-CV-00051, 2024 WL 4068763 (S.D. Tex. Sept. 5, 2024). Though the First Amended Complaint refers to "Plaintiffs" and "Plaintiffs' cause of action," the case has been styled so that Aniko Tassy Toka and Thomas Tassy brought this suit as next friends of B.V.T. (Dkt. #7). Nothing in the pleadings suggest that Aniko Tassy Toka and Thomas Tassy filed this suit in their individual capacities (Dkt. #7). Thus, the only Plaintiff in this suit is B.V.T.

(Dkt. #24, at p. 8). On August 18, 2023, an "Admission, Review, and Dismissal" ("ARD") committee meeting was convened "to address…concerns regarding [Plaintiff]'s behavior" (Dkt. #24, at p. 8; Dkt. #37, at p. 10). Afterwards, a Functional Behavior Assessment ("FBA") was conducted to gather more information about Plaintiff's behavioral problems (Dkt. #24, at p. 8; Dkt. #37, at p. 10, 23-24). Based on the FBA, a Behavior Intervention Plan ("BIP") was completed for Plaintiff on September 22, 2023 (Dkt. #24, at p. 8). It addressed "concerns with physical aggression, non-compliance, maladaptive verbals, and elopement" (Dkt. #24, at p. 8; Dkt. #37, at p. 24). Also on September 22, 2023, the ARC committee determined that Plaintiff was going to be "moved to the Behavior Intervention Classroom due [to] the need for more intensive behavioral supports" (Dkt. #27, at p. 34).

However, on September 7, 2023, during the FBA's completion, Plaintiff's parents, Aniko Tassy Toka and Thomas Tassy, assert that Plaintiff was isolated, restricted, verbally abused, physically assaulted, and restrained by Defendant's employees at DES (Dkt. #7, at p. 2). This led Plaintiff to sue Defendant for violations of 42 U.S.C. § 12101 et. seq., 42 U.S.C. § 12131 et. seq, Title II of the Americans with Disabilities Act ("ADA"), and 29 U.S.C. § 794, Section 504 of The Rehabilitation Act of 1973 ("§ 504" or "RA") (Dkt. #7, at p. 4). Specifically, Plaintiff complains of Defendant's employees' physically prohibiting her from entering the general education classroom, requiring her to enter the special education classroom, and reacting to "manifestations of [her] disability" (Dkt. #7, at p. 2). No administrative remedies were ever pursued by Plaintiff or her parents prior to this suit (Dkt. #24, at pp. 12-13).

Plaintiff claims that Defendant, through its employees, "failed to provide [Plaintiff with] accommodations for her failure to comply with their directives to her to refrain from entering a general educational classroom and to enter a special education classroom" (Dkt. #7, at p. 2).

Instead, Defendant's employees allegedly "isolate[ed], restrict[ed], verbally abus[ed], physically assault[ed], and restrain[ed] [Plaintiff] over the course of several hours" (Dkt. #7, at p. 2). Namely, they "blocked [Plaintiff]'s movements outside of the school building, and ingress and egress to classrooms and a hallway [and] …repeatedly grabbed, pushed, and pressed their bodies against [her]" (Dkt. #7, at p. 2). Plaintiff claims she left school with "visible bruises and abrasions because of Defendant's employees' acts" and feared returning to school (Dkt. #7, at p. 3). Additionally, Plaintiff alleges that her parents requested video footage from the day of the incident from DES but were not provided "an opportunity to review all video recordings of these incidents involving [Plaintiff] in the legally required time limit" (Dkt. #7, at p. 3).

Plaintiff claims that "[she] suffered general damages, and non-economic damages - physical pain and suffering, inconvenience, loss of enjoyment of life, and injury to reputation from Defendant's discriminatory acts" (Dkt. #7, at p. 4). Accordingly, she seeks "[e]conomic, noneconomic, special, and general damages;…[a]ttorney's fees;…[t]axable expenses of litigation and costs of court; and…[p]ost-judgment interest at the maximum lawful rate" (Dkt. #7, at p. 11).

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 Fed. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v.*

*Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All inferences must be construed in the light most favorable to the nonmoving party. *See id.*; *Osprey Ship Mgmt. Inc. v. Foster*, 387 Fed. App'x 425, 429 (5th Cir. 2010). "[T]he substantive law will identify which facts are material. This means [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir.), *cert. denied*, 140 S. Ct. 653 (2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (internal quotations omitted).

The party moving for summary judgment has the burden of showing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191 (5th Cir. 2011). "[W]here the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). However, if the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 Fed. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 Fed. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249–50).

## III. ANALYSIS

Plaintiff cannot survive Defendant's Motion because she failed to establish that her claims are not subject to administrative exhaustion and she has not made a "sufficient showing" of intentional discrimination. *See Gonzales*, 806 Fed. App'x at 291.

### *A. Exhaustion of Administrative Remedies*

Under IDEA, parents are afforded "[a]n opportunity [] to present a complaint… with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education [("FAPE")] to such child." 20 U.S.C. § 1415(b)(6)(A). Afterwards, "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency…" *Id.* at § 1415(f)(1)(A). In Texas, due process hearings are only heard by the Texas Education Agency ("TEA"). Tex. Admin. Code § 89.1151(b). If a party disagrees with the Administrative Law Judge's ("ALJ") decision pursuant to the TEA hearing, IDEA then provides parties with the "[r]ight to bring [a] civil action." 20 U.S.C. § 1415(i)(2).

The statute specifically notes that parties have "90 days from the date of the *decision of the hearing officer* to bring such an action…" *Id.* at § 1415(i)(2)(B) (emphasis added). The Fifth Circuit has held that "[e]xhaustion requires more than pleading a claim, however; it requires 'findings and decision' by the administrative body." *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) (citing 20 U.S.C. § 1415(g)). Moreover, when "the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities…" are alleged instead of IDEA specific claims, the exhaustion requirement may still

apply. 20 U.S.C. § 1415(l); *Fry v. Napoleon*, 580 U.S. 154, 169 (2017). Non-IDEA claims are barred by failure to exhaust administrative remedies when "the 'substance, or gravamen' of the plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education." *Claxton v. Whitehouse Indep. School Dist.*, No. 6:24-CV-00402-JCB-JDL, 2025 WL 2369401, at *9 (E.D. Tex. Jan. 28, 2025) (citing *Fry*, 580 U.S. at 169).

A non-IDEA claim "seeks relief for the denial of an appropriate education," and is subject to the IDEA exhaustion requirement when the following hypothetical questions are negatively answered. *Id.* at *10. The first: "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" *Id.* The second: "…could an adult at the school—say, an employee or visitor—have presented essentially the same grievance?" *Id.* If the answer to both is no, then the non-IDEA claimant must first exhaust her administrative remedies before petitioning the federal court system. *See id.*

Here, Plaintiff cites the ADA and § 504 of the Rehabilitation Act as the basis of her claims in her Amended Complaint (Dkt. #7, at pp. 4, 10). Defendant argues that these claims revolve around Defendant's "alleged failure to provide [Plaintiff] with a FAPE under the IDEA" (Dkt. #24, at p. 11). Defendant details that "Plaintiff's allegations relate directly to the ARD committee's actions…Plaintiff asserts [Defendant] 'failed to provide [her with] accommodations for her failure to comply with their directives'…any alleged failure to accommodate [her] behaviors on September 7, 2023, relates directly back to her IEP and a receipt of a FAPE" (Dkt. #24, at p. 12). Defendant further asserts that Plaintiff meets the *Fry* test because she "could not have brought the same claims outside of the context of her school and an adult could not have raised the same claims.

[Also,] [a] public school has no obligation to accommodate the behavioral needs of an adult visitor" (Dkt. #24, at p. 12).[2]

In her response to Defendant Lewisville Independent School District's Motion for Summary Judgment" ("Response") (Dkt. #34), Plaintiff argues that she was not required to exhaust any administrative remedies because this is not a FAPE case (Dkt. #34, at pp. 8-9). Regarding the first element of the *Fry* test, Plaintiff "allege[s] that school personnel physically grabbed, restrained, isolated, and mishandled a seven-year-old child with autism, resulting in bruising, fear, and emotional distress. Conduct of that nature would be actionable anywhere a public employee interacts with a member of the public. Nothing about the claim depends on the educational context" (Dkt. #34, at p. 8). Regarding the second element of the *Fry* test, Plaintiff asserts that "[i]f a government employee physically restrained, shoved, or isolated an adult visitor to a public building, that individual could bring an ADA Title II or Section 504 claim without ever invoking the IDEA. The core wrong alleged here, physical mistreatment and discriminatory treatment based on disability, is not unique to children or to students" (Dkt. #34, at pp. 8-9).

In its "Reply Brief in Support of Its Motion for Summary Judgment" ("Reply") (Dkt. #35), Defendant argues that Plaintiff "fails to address all of the allegations [it] brought forth, which are supported by the summary judgment record. Plaintiff's interrogatory responses, as well as the deposition testimony …, directly tie the alleged mistreatment of [Plaintiff] to her disability given District employees' alleged failure to provide [Plaintiff] with her accommodations…Plaintiff

[2] Defendant also argues that its alleged failure to "timely evaluate [Plaintiff] for Dyslexia is even more directly tied to her receipt of a FAPE" (Dkt. #24, at p. 12). However, the court does not find that Plaintiff asserted this as a basis for her claims in her First Amended Complaint (Dkt. #7). Plaintiff's mother, Aniko Tassy Toka, mentioned this as a basis of discrimination in her deposition, as provided by Defendant, but it was not plead in any of Plaintiff's pleadings (Dkt. #25, at pp. 26, 77).

simply cannot divest her allegations regarding [Plaintiff]'s behaviors on September 7, 2023, from her [IEP] and her receipt of a [FAPE]" (Dkt. #35, at p. 2).

### 1. *Fry* Test

In *S.B. by & through S.B. v. Jefferson Par. Pub. Sch. Sys.*, the United States Magistrate Judge of the Eastern District of Louisiana was affirmed by the United States District Judge and the Fifth Circuit when it held a plaintiff's claims under the ADA and § 504 required exhaustion at the administrative level pursuant to the *Fry* test. No. CV 21-217, 2021 WL 7697245, at *1, *8-9 (E.D. La. Dec. 9, 2021) [hereinafter *S.B.*], *objections overruled sub nom. S.B. by & Through S.B. v. Jefferson Par. Sch. Bd.*, No. CV 21-217, 2022 WL 879369 (E.D. La. Feb. 1, 2022), and *aff'd sub nom. S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, No. 22-30139, 2023 WL 3723625 (5th Cir. May 30, 2023). In that case, the plaintiff was an "an eleven-year old girl with autism spectrum disorder" who qualified for an IEP. *Id.* at *1-2. The suit arose against the plaintiff's school district because the plaintiff was "slapped on the wrists on two separate occasions nine months apart for misbehaving in a way that threatened or actually visited violence upon adult caregivers." *Id.* at *1.

In *S.B.*, the plaintiff attempted to amend her complaint and revive her claims by asserting that the school district violated the ADA and § 504 by failing to reasonably accommodate her disability. *Id.* at *2, *8-9. Moreover, she sought to amend her complaint and prove intentional discrimination by adding an example that other, non-disabled children were not disciplined in the same manner that she was. *Id.* at *2. The Plaintiff also alleged that the district's employees that slapped her failed to use "any commonsense tactics to calm" her. *Id.* at *8. However, the Court found that the plaintiff "challenge[d] the use of force to address disruptive behavior in the educational setting," which essentially contested the defendant's employees' response to "the unique and individualized needs of [the plaintiff]." *Id.* at *9.

Accordingly, the Court noted that "[a]lthough claims for physical abuse are generally excepted from the exhaustion requirement, when the alleged physical abuse is connected to the provision of educational services, the exhaustion rules may apply." *Id*. To support this assertion, the Court cited the Fifth Circuit's holding in *Reyes*. *Id.* There, the Fifth Circuit found that a school district's "use of physical force as a reaction to stop a student's violent outbreak in [an] educational setting" triggered "the IDEA's exhaustion requirement." *Id.* (citing *Reyes*, 850 F.3d at 256). In *S.B.*, the Court found that the school district's employees did not "slap[] [the plaintiff's] wrists out of animus or frustration, but rather, in response to [the] [p]laintiff's kicking and pinching [of the defendant's employees] during the provisions of educational services." *Id*. Since the plaintiff was essentially challenging the defendant's response to her "unique and individualized needs," *i.e.*, its alleged failure to accommodate her, IDEA's administrative exhaustion requirement was triggered. *See id.*

Plaintiff's current allegations are analogous to those in *S.B.* Like the plaintiff in *S.B.*, Plaintiff filed her claims under the ADA and § 504. *See id.* at *8. Moreover, Plaintiff also asserts that she suffered from impermissible discrimination, as compared to her non-disabled twin sister, when Defendant failed to accommodate her (Dkt. #7, at p. 2; Dkt. #25, at p. 76). *See id.* at *2, *8-9. As support for this argument, Plaintiff listed alternative actions that Defendant's employees could have taken rather than the ones they did (Dkt. #7, at pp. 2-3). This parallels the argument made by the plaintiff in *S.B.* that asserts the defendant's employees failed to use "any commonsense tactics to calm Plaintiff, such as speaking in a quiet, calm voice or providing her adequate personal space." *Id.* at *8. In *S.B.*, the Court ultimately found that the alleged physical abuse against the child occurred in response to the plaintiff's behavior, which was part of her unique and individualized needs. *Id.* at *9. Similarly, the court here finds that any alleged physical

abuse against Plaintiff, and any alleged failure to accommodate Plaintiff, occurred as a result of her unique and individualized needs (*See* Dkt. #27, at pp. 10, 24). *See id.*

At the time of the incident, there was an ongoing FBA gathering information about Plaintiff's behavioral problems and how to address them (Dkt. #24, at pp. 8, 11-12; Dkt. #27, at p. 10). The FBA was initiated because of Plaintiff's ARD meeting, a meeting that was conducted, in part, to address concerns about Plaintiff's behavior (Dkt. #24, at p. 8 Dkt. #27, at p. 10). These actions were taken pursuant to Plaintiff's IEP, which is directly connected to FAPE (Dkt. #27, at p. 10). Plaintiff could not bring these claims against another public facility because such facilities are not under the same FAPE obligations that Defendant is. *See Claxton*, 2025 WL 2369401, at *10. Moreover, an adult at the school could not bring these claims against Defendant because Defendant has no FAPE obligations to adults at the school. *See id.* As such, Plaintiff's claims meet the *Fry* test.

***B. Remedies***

Despite meeting the *Fry* test, Plaintiff's ADA and § 504 claims are not subject to exhaustion "if the remedy [] [P]laintiff seeks is not one IDEA provides." *Id.* (citing *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023)). Compensatory and punitive damages are not available as remedies under IDEA. *J.W. v. Paley*, 81 F.4th 440, 448 (5th Cir. 2023). However, injunctive relief is. *Huron v. Natalia Indep. Sch. Dist.*, No. SA-25-CV-00230-JKP, 2025 WL 2252606, at *5 (W.D. Tex. Aug. 6, 2025). IDEA also explicitly provides for an award of attorneys' fees. 20 U.S.C. § 1415(i)(3)(B). Moreover, the Supreme Court has interpreted IDEA to allow for the recovery of costs as provided in 28 U.S.C. §1920 but prohibits the recovery of expert or witness fees. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301–02 (2006). Additionally, because IDEA creates a federal cause of action, post-judgment interest is mandatory

and is calculated from the date of judgment. *I.W. by & through Karen K. v. Hardin-Jefferson Indep. Sch. Dist.*, No. 1:15-CV-332, 2017 WL 5644386, at *21-22 (E.D. Tex. Jan. 4, 2017).

**1. Attorney's fees; Taxable expenses of litigation and costs of court; and Post-judgment interest at the maximum lawful rate**

Plaintiff included four requests for relief in her Amended Complaint: "a. [e]conomic, noneconomic, special, and general damages; b. [a]ttorney's fees; 3. [t]axable expenses of litigation and costs of court; and d. [p]ost-judgment interest at the maximum lawful rate" (Dkt. #7, at p. 11). As outlined above, attorney's fees, taxable expenses of litigation and costs of court, and post-judgment interest are recoverable under IDEA. 20 U.S.C. § 1415(i)(3)(B); *Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. at 301–02; *I.W. by & through Karen K.*, 2017 WL 5644386, at *21-22. "[A] plaintiff who files an ADA [and/or §504] action seeking both damages and the sort of equitable relief IDEA provides may find [her] request for equitable relief barred or deferred if [s]he has yet to exhaust § 1415(f) and (g)." *Luna Perez*, 598 U.S. at 150. Thus, Plaintiff's claims, to the extent that they seek "[a]ttorney's fees; [] [t]axable expenses of litigation and costs of court; and [] [p]ost-judgment interest at the maximum lawful rate," are subject to the administrative exhaustion requirement and are barred from federal review until that process is complete. *See Clark*, 2026 WL 1096573, at *9.

**2. Economic, noneconomic, special, and general damages**

It is not immediately clear what Plaintiff is seeking when she states that she prays the court enter a judgment against Defendant for "[e]conomic, noneconomic, special, and general damages" (Dkt. #7, at p. 11). Defendant asserts several arguments that these damages are not recoverable and/or recoverable under IDEA and subject to administrative exhaustion (Dkt. #24, at pp. 13-17). To support these assertions, Defendant attaches 181 pages of competent summary judgment evidence (Dkt. #25; Dkt. #27). That evidence includes Plaintiff's interrogatories, deposition

transcripts from Plaintiff's parents, videos from the day of the incident, Plaintiff's IEPs, Plaintiff's FBA, Plaintiff's Full Individual Evaluation ("FIP"), a declaration from Defendant's Special Education Director, a declaration from a Behavior Interventionalist in Defendant's employ that was consulted the day of the incident, and a Special Education Teacher from DES that was involved in the incident (Dkt. #25; Dkt. #27). In her Response, Plaintiff counters that her "damages include physical pain, emotional harm, humiliation, general and special damages, and out-of-pocket expenses incurred for medical and therapeutic care" (Dkt. #34, at p. 10). Seeing as these damages do not fall within the categories of "[a]ttorney's fees; [] [t]axable expenses of litigation and costs of court; and [] [p]ost-judgment interest at the maximum lawful rate," the court construes them as Plaintiff's alleged "[e]conomic, noneconomic, special, and general damages" (*See* Dkt. #7, at p. 11).

Plaintiff asserts that these damages are not recoverable under IDEA because they are traditional compensatory damages sought under the ADA and § 504 (Dkt. #34, at p. 10). Some of these categories of damages are not recoverable at all, while others are not recoverable under the circumstances herein.

***a) Non-recoverable Damages***

Plaintiff's "emotional harm [and] humiliation" is not recoverable under the ADA and § 504. As Defendant stated in its Motion, the Supreme Court in *Cummings v. Premier Rehab Keller, P.L.L.C.*, decided that "emotional distress damages are not recoverable" under § 504. 596 U.S. 212, 230 (2022). The case was limited to antidiscrimination statutes that fell under the Spending clause. *Id.* However, the ADA, a non-Spending clause statute, expressly incorporates the remedies set forth in the Rehabilitation Act. *See* 42 U.S.C. § 12133.

Previously, the Fifth Circuit "declined to decide whether *Cummings* extends to claims under Title II of the ADA…" because "the district court specifically declined to address this argument [and that] counsel[ed] against entertaining the argument for the first time on a motion for reconsideration." *Lartigue v. Northside Indep. Sch. Dist*., 100 F.4th 510, 523 (5th Cir. 2024). However, it instructed the Western District of Texas on remand that it "may consider the issue if need be." *Id.* Upon remand, the case was settled, and a Joint Motion to Dismiss with Prejudice was granted without considering this issue (5:19-cv-00393-JKP, Dkt. #138; Dkt. #143). However, a different case out of the same division of the same district court previously decided that emotional distress damages under the ADA were unavailable. *Johnson v. Callanen*, No. SA-22-CV-00409-XR, 2023 WL 4374998, at *12 (W.D. Tex. July 6, 2023). Moreover, the Second, Ninth, and Eleventh Circuits have held that *Cummings* prohibits the recovery of emotional distress damages under the ADA. *Doherty v. Bice*, 101 F.4th 169, 175 (2d Cir.), *cert. denied*, 145 S. Ct. 381, 220 L. Ed. 2d 144 (2024); *Payan v. Los Angeles Cmty. Coll. Dist.*, 169 F.4th 971, 977 (9th Cir. 2026); *A.W. by & Through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1314 (11th Cir. 2024), *cert. denied sub nom. A. W., by & through J. W. v. Coweta Cnty. Sch. Sys.*, 145 S. Ct. 1058, 220 L. Ed. 2d 384 (2025). The court cannot find contrary holdings by other Circuits, nor did Plaintiff point to such case law (*See* Dkt. #34, at p. 13). Thus, "emotional harm [and] humiliation" are not recoverable under the ADA and § 504, whether they are subject to administrative exhaustion or not.

Additionally, "out-of-pocket expenses incurred for medical and therapeutic care" are not recoverably by Plaintiff. Defendant argues in its Motion that "[a] claim for reimbursement for medical expenses belongs to Anik[o] and Thomas Tassy who are not parties to this lawsuit" (Dkt. #24, at p. 16). Plaintiff acknowledges in her Response that "[t]he Complaint expressly identifies

'Aniko Tassy Toka and Thomas Tassy as next friends of [Plaintiff]'…[and] the minor - not the representative - is the real party in interest. The parents' role is to appear on the child's behalf, not to assert independent claims unless they choose to do so" (Dkt. #34, at p. 12).

As explained above, "[t]he next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party...." *Morgan*, 157 U.S. 195. The claims asserted belong to Plaintiff and not her next friends, and vice versa. *See id.* Accordingly, Plaintiff cannot recover for claims that belong to her next friends when they only serve as next friends and do not assert independent causes of action. *See id.* The Fifth Circuit has held that damages for "past medical expenses," under the ADA and § 504, are considered a "direct claim asserted by the parents" under Texas common law. *Rideau v. Keller Indep. Sch. Dist.,* 819 F.3d 155, 161 (5th Cir. 2016) (citing *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983) ("Historically, in Texas, the right to recover for medical costs incurred in behalf of the minor is a cause of action belonging to the parents…")). Plaintiff clearly states in her Response that "[t]he parents' role [as next friends] is to appear on the child's behalf, *not to assert independent claims* unless they choose to do so" and that "[t]he Complaint properly names the minor child through her parents as next friends" (Dkt. #34, at p. 12) (emphasis added). As such, regardless of administrative exhaustion, Plaintiff cannot recover for her "out-of-pocket expenses incurred for medical and therapeutic care" because she has no independent cause of action for these damages.

***b) Damages Plaintiff Cannot Recover in This Context***

Thus, Plaintiff is left with the argument that "physical pain, general and special damages" constitute "[e]conomic, noneconomic, special, and general damages" and are not recoverable under IDEA because they are traditional compensatory damages sought under the ADA and § 504 (Dkt. #34, at p. 10). Presuming that these damages are compensatory in nature, Plaintiff may only

recover them under her ADA and § 504 claims if she establishes "intentional discrimination" by Defendant (Dkt. #7, at p. 4). *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). This is an essential element of a suit for a private cause of action under the ADA and § 504. *See id.* Because Defendant does not bear the burden of this issue at trial, Defendant must only demonstrate that Plaintiff "failed to make a sufficient showing on" this essential element. *Gonzales*, 806 Fed. App'x at 291 (citing *Celotex*, 477 U.S. at 323). Afterwards, Plaintiff "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers*, 951 F.3d at 307. "[C]onclusory allegations are not competent summary judgment evidence and therefore are insufficient to defeat a motion for summary judgment." *Back v. Texas Dep't of Crim. Just. Institutional Div.*, 684 F. App'x 356, 359 (5th Cir. 2017) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)).

Defendant argues that "Plaintiff's claim…for intentional discrimination…fail[s]" (Dkt. #24, at p. 18). Namely, Defendant asserts that "Plaintiff has produced no evidence, outside of her and her parents' assumptions, that the employees ignored [Plaintiff]'s behavioral needs or displayed hostility to her based on her disability. As such, [Plaintiff] has failed to create a material dispute on the issue of intentional discrimination for her failure to accommodate claim" (Dkt #24, at p. 21; *See* Dkt. #25, at pp. 181-183). In her Response, Plaintiff's only argument about intentional discrimination is "that disability-based disparate treatment is actionable when a plaintiff shows that the defendant acted with deliberate indifference to the individual's federally protected rights…Plaintiff['s] evidence that staff escalated disability-related behavior rather than accommodating it is sufficient to create a jury question under this standard" (Dkt. #34, at p. 16). Plaintiff does not point the court to any evidence that supports her claim of intentional

discrimination but rather argues that this issue is disputed and constitutes a genuine issue of material fact (Dkt. #34, at pp. 14, 16).

Alternatively, Defendant provided evidence that Plaintiff "failed to make a sufficient showing on" intentional discrimination. *Gonzales*, 806 Fed. App'x at 291 (citing *Celotex*, 477 U.S. at 323). Namely, Defendant offered a Declaration by Sheri Thomas ("Thomas"), a Special Education Teacher at DES that was involved in the September 7, 2023, incident (Dkt. #25, at pp. 180-13). Thomas detailed that the incident began when the DES principal "was attempting to usher [Plaintiff] to [Thomas's special education] classroom…to calm her down before sending her to class in the general education setting" (Dkt. #25, at p. 181). At that time, Thomas describes Plaintiff as being "dysregulated, physically aggressive, and not in the right state to be in class" (Dkt. #25, at p. 181). Once Plaintiff was within the classroom, Thomas explains that she

> attempted to help block [Plaintiff]'s ability to elope down the hallway toward an exit door. [Thomas] blocked the area by standing in the hallway. If [Plaintiff] came near [her], [she] stood there to block [Plaintiff's] path and encourage her to go to the BASE classroom with [Thomas's] body language. Any contact [Thomas] made with [Plaintiff]'s body came from [Plaintiff] bumping into [her] as [she] was blocking [Plaintiff's] movement or her physical aggression. [Thomas] do[es] not recall putting [her] hands on [Plaintiff] to restrain her, nor do[es] [she] recall any other DES staff restraining or grabbing [Plaintiff]. [Thomas's] primary concern was for [Plaintiff]'s safety, particularly preventing her from eloping out of the door at the end of the hallway or running through the halls. [Plaintiff] did not want to go into the BASE classroom but [Thomas], along with other DES staff, were able to get her to enter the classroom by blocking her path. The BASE classroom was the proper place for [Plaintiff] to calm down because it is a safe, quiet space that contained multiple items intended to provide distraction and regulation.

(Dkt. #25, at p. 182).

Plaintiff only provided conclusory allegations as "proof" of intentional discrimination and her alleged compensatory damages (Dkt. #34, at pp. 14, 16). Conclusory allegations are "not competent summary judgment evidence and therefore are insufficient to defeat a motion for summary judgment." *Back*, 684 F. App'x at 359 (citing *Eason*, 73 F.3d at 1325). Moreover, "[i]t

is not [the court's] function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which [it] relies." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 996-97 (5th Cir. 2019) (citation omitted); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citation omitted). Thus, Plaintiff has not made a sufficient showing that her alleged compensatory damages are due to intentional discrimination by Defendant (*See* Dkt. #34; *See* Dkt. #7).

Accordingly, regardless of Plaintiff's lack of administrative exhaustion, at this stage of the litigation, Plaintiff's claim for "[e]conomic, noneconomic, special, and general damages" must fail. Moreover, Plaintiff claims for attorney's fees, taxable expenses of litigation and costs of court, and post-judgment interest at the maximum lawful rate, are subject to administrative exhaustion.

## IV. CONCLUSION AND RECOMMENDATION

Based on the foregoing, Defendant Lewisville Independent School District's Motion for Summary Judgment (Dkt. #24) is hereby **GRANTED**, and Plaintiff's case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED this 22nd day of September, 2026.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE